IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CARREL T. LILES | ) |
| | ) |
| v. | ) NO. 3-14-1348 |
| | ) JUDGE CAMPBELL |
| METROPOLITAN GOVERNMENT | ) |
| OF NASHVILLE AND DAVIDSON | ) |
| COUNTY, TENNESSEE | ) |

MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 27). For the reasons stated herein, Defendant's Motion is GRANTED.

FACTS

Plaintiff is a former employee of Defendant's public school system who worked as a musical instrument repair technician apprentice. Plaintiff was hired on a 90-day probationary period to ensure he could fulfill the job requirements. Plaintiff's immediate supervisor was Mr. Tatarsky, who reported to Ms. Schell, the Director of the school system's "Music Makes Us" program.

Plaintiff received a written performance evaluation from Mr. Tatarsky on February 22, 2013. That document (Docket No. 29-5) is entitled "Progress of Todd Liles" and reflects numerous projects which Plaintiff was given by Tatarsky to complete. Plaintiff admits that this evaluation contains specific details regarding which tasks Plaintiff was adequate in performing and those in which he needed improvement.

Although Plaintiff testified otherwise, Mr. Tatarsky testified that Plaintiff's overall performance was not good and was, in fact, poor. For example, Mr. Tatarsky testified that, with regard to the clarinet, Plaintiff's installation of the corks on the keys and on the body and actual installation of the pads was "all right." He stated that Plaintiff did not get the concept of adjusting

the keys to get the certain keys to close together. Tatarsky testified that Plaintiff's performance with the brass instruments was very poor, noting that "he exhibited the same things as lack of strength and just lack of concept of what he was trying to do." Docket No. 29-3, p. 15 of the deposition. Tatarsky testified that he was not encouraged by Plaintiff's job performance, stating that he saw no evidence that Plaintiff would improve. *Id.*, p. 22.

Mr. Tatarsky also discussed Plaintiff's performance review with his supervisor, Ms. Schell, who testified that she understood that while there were some positive aspects to the evaluation, the overall content was not positive. She understood that Plaintiff was not progressing quickly, had difficulty following procedures and protocols, and lacked the ability to perform key aspects of his work. Docket No. 29-2, pp. 19-20 of the deposition; Docket No. 31, ¶ 17. Ms. Schell asked Mr. Tatarsky whether he thought Plaintiff was going to succeed, and Mr. Tatarsky answered that he did not see any chance of that. Ms. Schell instructed Mr. Tatarsky to notify Plaintiff that Defendant was beginning the process of terminating his employment, and she recommended to Defendant's Human Capital Department that Plaintiff's employment be terminated. Docket No. 31, ¶¶ 19-21.

On February 25, 2013, three days after his performance evaluation, Plaintiff suffered a retina detachment allegedly caused by three incidents at work the following week: a piece of metal striking his eye, a splash of chemicals from the instrument bath striking his face, and a heavy instrument striking his head. Plaintiff notified Mr. Tatarsky of this injury on February 25, 2013. Plaintiff had to have surgery on that eye on either March 26, 2013 (Docket No. 31, ¶ 14) or March 1, 2013 (Docket No. 22, ¶ 16). Plaintiff was not released to return to work until April 10, 2013.

On April 25, 2013, Defendant's Executive Director of Human Capital Operations, Craig Ott, sent Plaintiff a letter outlining Plaintiff's deficiencies in job performance and providing Plaintiff an

opportunity to meet with Mr. Ott to present his version of events. Mr. Ott was the final decision-maker with regard to Plaintiff's firing. Mr. Ott testified that he had no knowledge of Plaintiff's detached retina until the day he met with Plaintiff to discuss his termination. On May 16, 2013, Mr. Ott sent Plaintiff a letter outlining the reasons for his termination.

Plaintiff has sued Defendant for violation of the Americans with Disabilities Act (the "ADA") for his termination and Defendant's failure to accommodate Plaintiff's disability.

## SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

 In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive

summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

## AMERICANS WITH DISABILITIES ACT

Plaintiff alleges that he developed a "disability" as that term is defined in the ADA or was perceived to be disabled, and Defendant fired him thereafter in violation of the ADA. To make out a *prima facie* case of disability discrimination, Plaintiff must show that: (1) he has a disability, as defined in the ADA; (2) he is otherwise qualified to perform the essential functions of the position, with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. *Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 433 (6th Cir. 2014).[1] The ADA bars discrimination "because of" an employee's disability, meaning that it prohibits discrimination that is a "but-for" cause of the adverse employment action. *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 314 (6th Cir. 2012); *Molina-Parrales v. Shared Hospital Servs. Corp.*, 992 F.Supp.2d 841, 855 (M.D. Tenn. 2014).

Defendant alleges that Plaintiff is not "otherwise qualified" to perform the essential functions of his position because he represented on his social security application that he was permanently impaired. Defendant argues that Plaintiff has failed to explain why his social security application is not inconsistent with his claim in this action that he could return to work. Plaintiff filed for social

---

[1]    If the Plaintiff establishes this *prima facie* case, then the burden shifts to the Defendant to offer a legitimate, nondiscriminatory reason for its adverse action. *Sjostrand v. Ohio State University*, 750 F.3d 596, 599 (6th Cir. 2014). If the Defendant makes this showing, which is a burden of production, not persuasion, the Plaintiff must then present evidence allowing a jury to find that the Defendant's explanation is a pretext for unlawful discrimination. *Id.*

security disability in June or July of 2013. In his social security disability application, Plaintiff noted that he was permanently impaired. Docket No. 29-1, pp. 175 of the deposition.

The Supreme Court has held that an apparent contradiction arises when a plaintiff brings an ADA claim, asserting that he is *not* too disabled to work, but also applies for social security benefits, stating that he *is* too disabled to work. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999). The Court held that an ADA plaintiff "cannot simply ignore" the contradiction, but "must proffer a sufficient explanation." *Id.* at 806; *Equal Employment Opportunity Comm'n. v. Burlington Northern & Santa Fe Railway Co.*, 621 F.Supp.2d 587, 597 (W.D. Tenn. 2009). Absent a sufficient explanation, an ADA plaintiff's sworn assertion in an application for disability benefits will negate an essential element of his ADA claim. *Id.*

"To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement," the plaintiff could nonetheless perform the essential functions of his job, with or without reasonable accommodation. *Cleveland*, 526 U.S. at 807; *EEOC,* 621 F.Supp.2d at 597-98; *see also Kiely v. Heartland Rehabilitation Services, Inc.*, 359 F.3d 386, 389 (6th Cir. 2004).

In deposition on August 17, 2015, Plaintiff testified that because he continued to have multiple eye surgeries, he still was not able to return to work. In his response brief, Plaintiff states that these surgeries require him to basically be home-bound for weeks at a time. Docket No. 32. Plaintiff then argues that his application does not state that he is permanently and totally disabled, citing to an Application Summary for Disability Insurance Benefits (Docket No. 29-15).[2] Based

---

[2]     It does not appear that the actual social security application is in the record.

upon these contradictory arguments, Plaintiff asserts that he is not required to explain why his representations of total, permanent disability in the past are consistent with his current ADA claim.

Plaintiff has admitted in deposition that he is permanently impaired and has admitted in his brief that he is required basically to be home-bound for weeks at a time. In his August 17, 2015 deposition, Plaintiff stated that he has continued to have multiple surgeries to his eye and has yet to be able to return to work.   Docket No. 29-14, p. 11 of the deposition.

Plaintiff has failed to show that, despite these admitted limitations, he is qualified to perform the functions of his job, with or without reasonable accommodation. Plaintiff has not shown how he could perform the essential functions of his job and return to work. He alleges that he  would be able to work with reasonable accommodations, but he fails to identify what those accommodations are.

Plaintiff testified in his deposition that he requested an accommodation on April 23, 2013, but he did not ask for a specific accommodation.  Docket No. 29-1, p. 135 of the deposition. Plaintiff also testified that he later asked Mr. Lindsey and Mr. Ott to place him in a different position, to allow him to work in the same place, using the accommodations allowed by the doctor, or to move him into a different position with lower pay.  *Id.*, p. 137 of the deposition. Again, Plaintiff fails to identify what those accommodations would have been. Plaintiff has admitted that his Amended Complaint does not identify any specific requests made or denied.  Docket No. 31, ¶¶ 30-31.

Plaintiff argues in his brief that Defendant had various open positions that he qualified for and easily could have been transferred to, yet he fails to say what even one of those open positions was.  He also fails to explain how he could have worked in a different position if he is permanently impaired, required basically to be home-bound for weeks at a time, continuing to have multiple

surgeries to his eye, and yet to be able to return to work. Even throughout briefing on the current Motion, Plaintiff has still not identified a specific accommodation which he believes would allow him to perform the essential functions of his job.

Even if Plaintiff had shown that he is "otherwise qualified" for his position, he has failed to show that Defendant's legitimate, non-discriminatory reason for his termination[3] was pretext for disability discrimination. Although he agreed in his deposition with many of the criticisms leveled in the evaluation, Docket No. 31, ¶ 10, in his response brief, Plaintiff basically disagrees with the evaluation of his performance issues. For example, Plaintiff argues that he "likely" received sub-par instructions from his supervisor and his supervisor had unreasonable expectations. He testified that he does not believe it was possible that Ms. Schell or Mr. Tatarsky did not think he was making adequate progress. Docket No. 31, ¶ 35. He did not provide a reason for his speculation that his termination was based on his disability. *Id*.

A plaintiff cannot establish pretext so long as the employer made a reasonably informed and considered decision before taking the adverse employment action. *Foster v. Spring Meadows Healthcare Center, LLC*, 2013 WL 829363 at * 10 (M.D. Tenn. March 6, 2013) (*citing Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)). Where the employer can demonstrate an honest belief in its proffered reason, an inference of pretext is not warranted. *Seeger v. Cincinnati Bell Telephone Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012). An employer's proffered reason is considered honestly held where the employer can establish it reasonably relied upon the

---

[3]     That reason was specific issues with Plaintiff's poor performance, which were so pronounced that Defendant did not believe they could be cured within the 90-day probationary period.

particularized facts that were before it at the time the decision was made. *Id.* A plaintiff is required to show more than a dispute over the facts upon which the decision was based. *Id.*

Plaintiff's performance evaluation, combined with the testimony of Tatarsky, Schell and Ott, reflect an honest belief that the business decision to fire Plaintiff was a reasonably informed and considered decision. Plaintiff has not shown more than a dispute over the facts upon which the decision was based.

For these reasons, the Court finds that Defendant's Motion for Summary Judgment on the issue of Plaintiff's termination should be granted.

With regard to Plaintiff's claim of failure to accommodate, the Court has already addressed that claim in its analysis of whether Plaintiff was "otherwise qualified" for the position. For the reasons explained therein, Plaintiff has failed to carry his burden on that claim as well.

CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment (Docket No. 27) is GRANTED, and this action is DISMISSED.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE